**Harvey Thomas ALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57658.**

Court of Criminal Appeals of Texas.

Oct. 17, 1979.

Steven F. Gamble, Longview, for appellant.

Odis R. Hill, Dist. Atty. and Nathan Holt, Asst. Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

### OPINION ON MOTION FOR REHEARING

ODOM, Judge.

The opinion on original submission is withdrawn.

This conviction is for the offense of murder. Punishment was assessed by the jury at fifty years.

Appellant challenges the sufficiency of the evidence and contends that the court erred in refusing to charge the jury on the law of circumstantial evidence and in refusing to allow examination of a written statement made by his wife, who testified for the State.

Appellant and his wife had several children, one of whom was Malinda. The parents engaged in severe abuse of Malinda, which included binding her hands and feet to her potty chair, hanging her by her hands from a belt, use of a wire brush on her legs and standing on her back. Appellant had bitten Malinda's fingers and toes with sufficient force to break the skin and draw blood. He also used a wooden board to strike her. His wife had once observed him strike Malinda's head with a board. Several days before her death, appellant had ordered his wife and other children from the room while he "punished" Malinda. The wife observed the broken board the next day.

Several days after this "punishment," on the evening of February 11, 1975, Malinda began to have convulsions and appeared lifeless; she was taken to the hospital where she was pronounced dead. Individuals who observed appellant at the hospital testified that he was unemotional. He was subsequently arrested and made statements indicating that he had punished his children with a board and told officers where they could find the board. Officers subsequently located the broken board; it had the name "Malinda" written on it.

A pathologist who conducted an autopsy on Malinda testified concerning extensive injuries and bruises to the child. The cause of death was trauma to the head. The head injuries were caused by the "sharp, jolting action" of a blunt instrument, which could have been the broken board.

The facts show a particularly brutal and prolonged course of child abuse. Mrs. Ales testified that she had seen the appellant hit the child in the back of the head with the board. The indictment charged that the appellant did "intending to cause serious bodily injury to an individual, Malinda Ann Ales, commit an act clearly dangerous to human life, to-wit: hit, strike and beat the said Malinda Ann Ales about the body, legs and arms with a board" thereby causing her death. Considering the evidence in the light most favorable to the verdict, we find that the evidence is sufficient.

Complaint is made that the jury was not charged on the law of circumstantial evidence. Mrs. Ales testified that she had seen appellant strike the child with a board in the past, but on the occasion in question she did not see him strike the child because she was ordered to leave the room and take the other children with her. Her testimony regarding when the death-causing injuries were believed to have been inflicted, was as follows:

"Q. All right. And prior to him throwing it away, did he use that board on the child, Malinda Ann Ales?

"A. I don't know.

"Q. All right. Well, tell me just what happened that night.

"A. That night I know he was angry.

"Q. Who was he angry at?

"A. Malinda.

"Q. All right. For what reason was he angry at Malinda?

"A. I can't remember.

"Q. All right.

"A. And he even yelled at me and said for me to leave the room and take the two children in the kitchen and I did. They were crying and they were upset and I took them in the kitchen and I was at the table and that was the night that he threw it away.

"Q. Did you have an opportunity to observe the child after he had told you to leave the room with the other kids?

"A. Not until the next morning.

"Q. And what did you see when you observed the child the next morning?

"A. Her head.

"Q. What part of her head?

"A. Her forehead.

"Q. And what was wrong with the front part of her forehead?

"A. It was swollen. I saw it that morning that I put her on the potty.

"Q. And was that the night that the board broke?

"A. Yes, sir."

In *Newton v. State,* Tex.Cr.App., 509 S.W.2d 610, 614, we stated:

"Though there was no direct evidence of the actual taking, the facts proved were in such close juxtaposition to the actual taking as to render a charge on circumstantial evidence unnecessary. Appellant was discovered while still in the act of the crime, before the stolen equipment had been removed from the scene. The fact that it had already been taken off the victim's premises did not in light of the facts in this case, make a charge on circumstantial evidence necessary."

Likewise, in the instant case, the facts were in such close relationship to the main fact to be proved as to be equivalent to direct testimony, and a charge on circumstantial evidence was not required. *Newton v. State,* supra; *Oltiveros v. State,* Tex.Cr.App., 474 S.W.2d 221; *Riggins v. State,* Tex.Cr.App., 468 S.W.2d 841.

█ Finally, appellant contends that the court erred in refusing his request for a copy of his wife's statement for use in cross-examination. At a pre-trial hearing, the following transpired:

"MR. MOBLEY: Just a minute, Your Honor. Your Honor, at this point we would request that we be furnished with a copy of the statement Mr. Hill is now referring to.

"THE COURT: She hasn't testified yet. I'll give it to you when she testifies. That's her statement.

"MR. MOBLEY: Judge, you granted me a copy of it back when he had the first pre-trial hearing. Now, again, Mr. Hill—

"MR. HILL: I didn't have a copy of it when we had the first pre-trial hearing. She wasn't even going to testify for me.

"THE COURT: We will follow the law with regard to witnesses who testify and if they have made any statement, for the purpose of cross examination I'll give you the statement, Counsel, at the proper time."

At the conclusion of Mrs. Ales' direct testimony at the case in chief, the following occurred:

"MR. HILL: I pass the witness at this time.

"MR. MOBLEY: We'll renew our discovery motion, Your Honor.

"THE COURT: Overruled."

There was no further request for the statement. Five separate pre-trial discovery motions were filed.

In *Haywood v. State,* Tex.Cr.App., 507 S.W.2d 756, we explained the rule regarding the accused's right to statements made by prosecution witnesses:

"Under the 'Gaskin Rule' when a witness for the State has made a report or has given a statement prior to testifying, the defendant, after a timely and *specific motion,* is entitled to inspect and use such prior and available report or statement for cross-examination and impeachment purposes." (Emphasis added.)

In the instant case, the judge had indicated that the statement would be given at the appropriate time. After Mrs. Ales testified, the most general possible request for her statement was made. After the request was denied, appellant did not in any way pursue it. In light of the fact that numerous pre-trial motions for discovery were made, the "request" was not specific enough for the court to understand what counsel was seeking. No error is shown.

There is no reversible error. The appellant's motion for rehearing is denied. The judgment is affirmed.

ROBERTS, J., dissents.